Carr & Wife, *et al.*, *vs.* Hobbs, Adm'r of Bell.

---

ALEXANDER CARR and wife, and others, *vs.* ALEXANDER H. HOBBS, Adm'r of ISAIAH BELL.

The acknowledgment and receipt in a deed for the purchase money, is only *prima facie* evidence of payment, and may be rebutted by parol proof, showing the inability of the grantee to pay it, and his admissions that he had not paid it.

Bills to enforce a *vendor's lien*, are in the nature of those for the specific performance of contracts; there must be certainty in the agreement, and it should be proved as alleged in pleading.

Where a bill by a grantor to enforce a vendor's lien, relies upon one consideration, and the proof by the grantee's admissions shows *another*, while the *deed* states one *different from both*, the consideration expressed in the deed must be adopted, there being no allegation of fraud or mistake, and no exception to the deed as evidence.

The vendor's claim for unpaid purchase money is a lien, as against the vendee and those claiming under him; the vendee holds the land as trustee for the vendor, and, on the other hand, if the purchaser pays before the estate is conveyed to him, the money will be considered a lien on the estate, in the hands of the vendor for the vendee, or, in case of his death, for his personal representatives.

Generally the vendor's lien cannot be enforced until the remedy against the personalty has been exhausted, but in a case where the personal estate of a deceased vendee has been settled up, and the interests of the defendants, his widow and heirs at law, will be consulted by looking at once to the realty, the claim may be paid out of the proceeds of the land, without remarshalling the assets.

APPEAL from the Circuit Court for Baltimore city.

The bill in this case, filed by Isaiah Bell, against the ad-

ministratrix and heirs at law of Jessee Bell, deceased, alleges, that on the 20th of September 1843, the complainant sold and deeded to his son Jesse Bell, a farm containing about twenty-three acres for $1800, as it was estimated, that is to say, Jesse was to give him $1000 in money, to be paid in instalments, with interest, of $100 a year, till all was paid, and was in addition to support, board and clothe complainant as long as he lived, for the balance of the value and consideration for the farm; that he has no doubt his son would have complied with this bargain had he lived, but several years ago he died suddenly, not having paid any part of the purchase money, and never having given, as provided, any part of the board and clothing, but owing complainant all of it, which is still due with interest; that he left a widow, Eliza, (who administered upon his estate, and since married the defendant Carr,) and three infant children his heirs at law; that his personal estate is insufficient to pay his debts and complainant's claim, which is a specific lien on the property. The bill then prays, that the farm may be sold to pay the complainant's said debt, and for general relief.

The deed filed with the bill, upon its face purports to be executed in consideration of $1000, acknowledged to have been received by the grantor from the grantee, and there is endorsed upon it a *receipt* by the grantee to the same effect. ·

The infants answered by guardian *ad litem*, disclaiming all knowledge of the matters alleged in the bill, and Carr and wife answer to the same effect, and require full proof. Pending the suit the complainant died, and the appellee, Hobbs, became his administrator.

The proof taken on the part of the complainant, shows that Jesse Bell the grantee, made *declarations* to several witnesses, that the consideration for the sale of the farm to him was $600 in money, and the finding the grantor, his father, in victuals and clothes for life, and also that he had not paid the purchase money. The purport of this testimony, as well as that on the part of the defendants, is sufficiently stated in the opinion of this court.

The defendants *excepted* to so much of the testimony as re-

fers to the declarations of Jesse Bell, deceased, in regard to the consideration of the deed from Isaiah Bell to him, and the non-performance thereof, because such declarations show a different and distinct consideration from that stated in the deed, and repel and rebut the lien set up by the complainant; and they further excepted to the testimony in the case, tending to show the consideration of the deed, because said testimony, if it shows any thing, shows a different consideration from that set forth in the bill of complaint.

The court below, (KREBS, J.,) was of opinion the complainant was entitled to relief, and referred the case to the auditor, to ascertain the balance of the purchase money due and unpaid, according to the *proof* in the case, and the value of the board and clothing, which the vendee failed to furnish the vendor.

The auditor in his report and account, charges the defendants with $600, as the purchase money proved to have been admitted by Jesse Bell, with interest, and the value of the board and clothing of the grantor, and credits them with the estimated rents and profits of the land while in the possession of the grantor, making a balance due the complainant of $2214.16. He also reported that the defendants, Carr and wife, as administrators of Jesse Bell, had passed their final account, and distributed the net personal estate amounting to $440.09, to his widow and children, but that this distribution was made with full knowledge of the claim in this case, and after suit brought.

The court then passed a decree for the sale of the land, to pay the balance so found by the auditor's account to be due, and from this decree the defendants appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Charles E. Phelps* for the appellants, argued:

1st. That the testimony excepted to is inadmissible under the *statute of frauds.* It goes to set up a secret trust, to wit, that the grantee should *support* the grantor *for life*, and is therefore within the 7th section of the statute. It is palpably

an attempt to set up a *conventional trust*, on the foundation of a *special parol* agreement, which cannot be done. 2 *Md. Rep.*, 25, McElderry vs. Shipley. 9 *G. & J.*, 80, Clagett vs. Hall. 4 Russell, 423, Leman vs. Whitley. 27 *Penn. State Rep.*, 144, Stafford vs. Stafford. And as to part performance, the record furnishes no evidence of any *acts* done by the complainant, which bear the slightest reference to such a contract as he alleges.

2nd. That the testimony is inadmissible, under the *common law* rule of evidence: that parol testimony is inadmissible to vary, add to or contradict, the express terms of a written instrument. A stronger case for the application of the rule could not be well presented, as the parol proof in this instance contrives both to *vary*, *add to* and *contradict*, the deed at one and the same stroke. The apparent exceptions to this general rule, are 1st, the cases where the *receipt* of the consideration, may be disproved or explained by parol, and these go upon the principle, that the acknowledgment of the receipt is no necessary or integral part of the deed, but is mere matter of recital, and not a *contract* or the *evidence of a contract*. 1 *Gill*, 84, Wolfe vs. Hauver. 3 *Md. Ch. Dec.*, 411, Spalding vs. Brent. 1 *J. J. Marshall*, 390, Gully vs. Grubbs. But these cases so far from being authorities for admitting evidence *to vary the amount* of the consideration, distinctly say, that receipts are inserted in deeds mainly to show the *actual amount* of consideration; with which it is consistent to prove that the *specified amount* had been assumed by note or otherwise: 2nd. Where the object and only effect of the parol proof is simply to *rebut a presumption of fraud*, it has, in some few cases of peculiar nature, been admitted to explain qualify or enlarge the consideration clause. 9 *G. & J.*, 80, Clagett vs. Hall. 1 *Gill*, 412, Cole vs. Albers & Runge. 3 *Md. Ch. Dec.*, 170, Anderson vs. Tydings. But even this liberty is allowed under stringent qualifications, as appears from the large number of instances where parol proof for that purpose has been rejected. 1 *H. & G.*, 175, Betts vs. Union Bank. 2 *Md. Ch. Dec.*, 447, Sewell vs. Baxter & wife, affirmed in 3 *Md. Rep.*, 334. 3 *Md. Ch. Dec.*, 349, Glenn

*vs. McNeal*, affirmed in 4 *Md. Rep.*, 87. 3 *Md. Ch. Dec.*, 468, *Notley Young's Estate*. 3 *Md. Ch. Dec.*, 99, *Bullett vs. Worthington*, affirmed in 6 *Md. Rep.*, 172. 3rd. So also a *grantee* has been allowed to prove a different consideration *actually paid* in bar of the vendor's lien, simply to raise an *equitable estoppel* upon the grantor, and to preclude him from disproving the receipt of the purchase money. 1 *Md. Ch. Dec.*, 392, *Elysville Manufacturing Co.*, *vs. Okisko Co.*, affirmed in 5 *Md. Rep.*, 158. 4th. When the controversy is between *strangers to the deed* and the consideration clause, is in question simply as a *recital* or *evidence of an independent fact*, it is to some extent open to explanation or even contradiction. 3 *Term Rep.*, 474, *Rex vs. Inhabitants of Scammonden*.

Subject to these exceptions, (which prove and illustrate the rule,) the consideration clause of a deed is as fully under the protection of the rule as any part of any other written instrument. Especially in a case like the present, where the parol evidence is designed to have an *executory operation*, in other words, where the object is to reform the contract, contained in and evidenced by the consideration clause, for the purpose of claiming its execution as reformed, or its equivalent in damages, it has been in Maryland *invariably rejected*, except upon averment and proof of fraud, accident, surprise or mistake. In addition to the cases already cited, see 6 *H. & J.*, 24, *Wesley vs. Thomas*. *Ibid.*, 435, *Watkins vs. Stockett*. 2 *Gill*, 409, *Henderson vs. Mayhew*. 5 *Gill*, 313, *Young vs. Frost*. 6 *Md. Rep.*, 57, *Alderson vs. Ames*. *Ibid.*, 479, *Showman vs. Miller*. 9 *Md. Rep.*, 185, *Beall vs. Greenwade*. *Ibid.*, 356, *Wilson vs. Watts*. To admit such proof would be to *reverse* one of the wisest and best settled principles of *elementary law*, to throw open the door to *frauds* and *perjuries*, and to place the most solemn and deliberate contracts at the mercy of *flagrant interpolations*. 1 *Story's Eq.*, secs. 153, 154. 2 *Do.*, sec. 1531. 2 *Starkie on Ev.*, 758. 2 *Wm. Bl. Rep.*, 1249, *Preston vs. Merceau*. 1 *Ves. Sen.*, 128, *Peacock vs. Monk*. 2 *Peere Wms.*, 203, *Clarkson vs. Hanway*. 1 *Johns.*, 139, *Schermerhorn*

37    v. 11.

*vs. Vanderheyden.* 7 *Johns.*, 341, *Maigley vs. Hauer.* 5 *Greenlf.*, 232, *Emery vs. Chase.* 6 *Ohio*, 246, *Stone vs. Vance.* 5 *Geo. Rep.*, 373, *Wynn vs. Cox.* 13 *Geo. Rep.*, 192, *Logan vs. Bond.*

3rd. That the evidence excepted to was inadmissible, as tending *to repel and rebut the lien* set up by the complainant. A consideration, in the form of an agreement, to find *board and clothing*, is inconsistent with an application to enforce a *vendor's lien*, because such lien is only raised on a definite and liquidated *money consideration.* The authorities uniformly speak of *purchase money*, as the only consideration which can support the lien. 4 *Kent*, 152. 2 *Story's Eq., sec.* 1217. 2 *Wat. Eden. on Injunctions*, 208, 209, *note.* 1 *Hilliard on Mortgages*, 463, 464. 1 *Hilliard on Real Property*, 378, 474. This then is an attempt to expand and stretch the doctrine of the *vendor's lien* beyond all precedents, whereas, it should not be extended further than its present limits, because being a secret and invisible trust, it contravenes the policy and spirit of our registry laws. 7 *Wheat.*, 46, *Bayley vs. Greenleaf.* 7 *Sergt. & Rawle*, 64, *Kauffelt vs. Bower.* 3 *Ired. Eq.*, 182, *Womble vs. Battle.* 3 *Leigh.*, 597, *Moore vs. Holcombe.* To enforce the *vendor's lien*, in favor of a collateral agreement or covenant, unliquidated and sounding in damages, would be to set a novel and dangerous precedent. If the special agreement is available at all it sounds in *damages*, and should be sued on *at law.* 3 *Md. Rep.*, 67, 80, *Stewart vs. Redditt.* More especially should it not be extended in favor of such a consideration as is here alleged, viz., *the support of the grantor for life.* The policy of our law is to discourage all impediments or restraints upon the *free alienation* of real property. Now it is obvious, that land incumbered with a charge or trust like this, is to that extent fettered and made virtually inalienable so long, at least, as the life or lives charged upon it continue in being. If land could be thus charged with the life support of the grantor, it could on the same principle be encumbered with the lives of his whole family, including infants even *in ventre.* If parties wish to make such an arrangement, let them reduce the terms of it to

writing, instead of trusting to *hearsay* and *loose declarations*, and then let them place it upon public record in the authentic form of a mortgage. To sustain our views in this particular we rely upon 8 *Leigh.*, 522, *Brawley vs. Catron.* 13 *Grattan*, 615, *McCandlish vs. Keen.* 6 *Conn.*, 458, *Meigs vs. Dimock.* 8 *Barb.*, 552, *McKillip vs. McKillip.* 29 *Miss. Rep.*, 67, *Patterson vs. Edwards.* 3 *Simons*, 499, *Clarke vs. Royle.* 3 *Mylne & Keene*, 655, *Parrott vs. Sweetland.* 13 *Simons*, 406, *Buckland vs. Pocknell.* 21 *Beav.*, 118, *Dixon vs. Gayfere.*

4th. That the evidence excepted to, tended to prove a *different consideration* from that set *forth in the bill of complaint*, and was therefore inadmissible. 4 *Md. Rep.*, 459, *Mundorff vs. Kilbourn.* This case is altogether different from *Drury vs. Conner*, 6 *H. & J.*, 288. The question here is not simply as to the *extent of the relief.* It might be very material to consider, whether the consideration to be proved by parol, was of the same nature and simply *additional* to that in the deed, or whether it is not in fact offered as a *substitute for*, and therefore in *contradiction of*, the moneyed consideration expressed in the deed, (the case made out by the proof.) 1 *H. & G.*, 186, *Betts vs. The Union Bank.*

5th. But whether this testimony was admissible or not, the whole fabric of the complainant's case is demolished by the positive testimony of *Isaac Bell*, who proves that the consideration stated in the deed, was, *in point of fact*, fully paid and satisfied.

*Alexander H. Hobbs* for the appellee, argued the following points:

1st. That the consideration clause in a deed may be contradicted and varied by *parol evidence.* 1 *Gill*, 91, *Wolfe vs. Hauver.*

2nd. Parol evidence of a *greater consideration* than that expressed in a deed, is admissible, provided it is of the *same kind*, and does not change the legal character of the deed. 2 *Phillip's Evidence*, 353. 1 *Greenleaf on Evidence*,

secs. 304, 200. 1 *Parsons on Contracts*, 353, *note (q,)* 355, 356, *note (t.)* 2 *Parsons on Cont.*, 61, 67, *notes (l) and (p.)* 2 *Amer. Law Reg.*, (1854,) 265. 4 *Mass.*, 680, 682, *Quarles vs. Quarles.* 17 *Mass.*, 256, *Wilkinson vs. Scott.* 1 *McCord*, 514, *Garrett vs. Stuart.* · 1 *J. J. Marshall*, 390, *Gully vs. Grubbs.* 7 *Pick.*, 533, 537, *Bullard vs. Briggs.* 4 *New Hamp.*, 229, *Morse vs. Shattuck.* 7 *Maine*, 175, *Tyler vs. Carlton.* 8 *Conn.*, 304, *Belden vs. Seymour.* 3 *Watts*, 156, *Jack vs. Dougherty.* 16 *Wend.*, 460, *McCrea vs. Purmort.* 13 *Maine*, 235, *Emmons vs. Littlefield.* 7 *Watts & Sergt.*, 399, *Strawbridge vs. Cartledge.* 5 *Barb.*, 455, *Frink vs. Green.* 4 *Hen. & Munf.*, 113, *Duval vs. Bibb.* 10 *Sergt. & Rawle*, 333, *Hayden & Wife vs. Mentzer.* 6 *Barb.*, 465, *Egleston vs. Knickerbacker.* 5 *Porter, (Ala. Rep.,)* 498, *Mead vs. Steger.* 3 *Sandf. Ch. Rep.*, 171, 172, *Shaw vs. Leavitt.* 9 *Juris.*, 633, *Clifford vs. Turaill.* 1 *Md. Ch. Dec.*, 392, *Elysville Manf. Co. vs. Okisko Co.* 3 *Md. Rep.*, 80. *Stewart vs. Redditt.* 9 *G. & J.*, 90, *Clagett vs. Hall.* 1 *Gill*, 423, *Cole vs. Albers & Runge.* 9 *Gill*, 32, *Shepherd vs. Bevin.*

3rd. The appellee is entitled to the benefit of the vendor's lien for the whole consideration proved. 3 *Md. Ch. Dec.*, 488, *Ringgold vs. Bryan. Beatty's Rep.*, 461, *Richardson vs. McCausland.* 2 *Story's Eq.*, secs. 1218, 1219, 1223, 1224. 3 *Sugden's Vend.*, 202. 3 *Md. Ch. Dec.*, 357, *Hutchins vs. Hutchins.* 10 *G. & J.*, 159, *Tolson vs. Tolson.*

4th. If, however, it should be determined that the appellee is not entitled to the vendor's lien for the *whole* consideration, he is, nevertheless, entitled thereto to the extent of the money consideration, and to share in the balance as a general creditor. 3 *Md. Ch. Dec.*, 411, *Spalding vs. Brent.* 10 *G. & J.*, 100, *Gibson vs. McCormick.*

5th. Having shown an insufficiency of personal assets, and exhausted the legal remedy, the appellee was entitled to proceed against the realty. 12 *G. & J.*, 482, *Richardson vs. Stillinger.* 6 *G. & J.*, 498, *Pratt vs. Vanwyck.* 2 *Md. Rep.*, 137, *Eyler & Matthews vs. Crabbs.*

Carr & Wife, *et al.*, *vs.* Hobbs, Adm'r of Bell.

TUCK, J., delivered the opinion of this court.

This bill was filed by the appellee's intestate, Isaiah Bell, in his life time, against the administrator and heirs of Jesse Bell, to enforce payment of the purchase money of a parcel of land which the former had sold to the latter, and conveyed by deed dated the 20th of September 1843.   The consideration of one thousand dollars is acknowledged, in the deed, to have been paid; and there is endorsed thereon a receipt to the same effect.

It is alleged, in the bill, that the real consideration was eighteen hundred dollars, as it was estimated, that is to say, one thousand thereof to be paid in money, and the balance by boarding and maintaining the grantor; but there is no reason shown why this part of the consideration was not mentioned in the deed.   This statement in the bill is not sustained by evidence; but the complainant's witnesses prove that Jesse Bell admitted to them that the true consideration was six hundred dollars in money, and that he was to support his father during the residue of his life.   Evidence was also offered that the consideration, with exception of the maintenance, had been paid.   The court below adopted the admissions of Jesse Bell, as to the consideration, and decreed payment accordingly, after allowing the defendants credit for the use and occupation of the land, which was in possession of the grantor from a short time after the deed until his death.

The acknowledgment and receipt for the purchase money being only *prima facie* evidence of payment, (*Higdon vs. Thomas*, 1 *H. & G.*, 139,) the appellee seeks to rebut the presumption, by showing the pecuniary condition of Jesse Bell, his inability to have paid so large a sum of money, and admissions made by him, that he had not paid for the land.   We consider the evidence sufficient, laying out of view the testimony of Isaac Bell, on which very little, if any, reliance can be placed.   We do not intimate that this witness stands impeached, but we think he must have been in error as to the matters of which he speaks, touching this alleged payment. There is confusion in his testimony which cannot be reconciled with the idea that Jesse Bell ever paid this money, and

he admitted, to the other witnesses, that he had not paid it. This view of the case is supported by other circumstances proved in the record. If he had paid for the land, we do not suppose he would have left it, and remained away until the time of his death, allowing the grantor to remain in possession, while he was toiling elsewhere for the support of his family. On the contrary, he said he had left the place, that he and his father could not live together, and that he wished him to pay the expense of the deeds, and take the land back.

The purchase money being due, we are to consider what it was, and how its payment can be enforced. Bills of this kind are of the nature of those for specific performance of contracts. *Elysville Co. vs. Okisko Co.*, 5 *Md. Rep.*, 152. There ought to be certainty in the agreement, and it should be proved as alleged in pleading. 3 *Md. Rep.*, 480, *Canal Co., vs. Young.* 4 *Md. Rep.*, 459, *Mundorff vs. Kilbourn.* 5 *Md. Rep.*, 18, *Stoddert vs. Bowie's Exc'r.* Here the bill relies upon one consideration, the proof shows another, while the deed states one different from both these. We have only the declarations of the grantor, as made in the bill, and those of the grantee, as proved by witnesses. If the statement in the bill were thus established, we should merely have to decide whether admissions by the parties of the same consideration, should prevail over the deed; but here they do not agree. Solemn instruments are not to be lightly dealt with. They are supposed to furnish the best evidence of the mind of the parties, though, in some cases, they will be allowed to have effect against their literal meaning; or rather, a different agreement will be enforced, as where fraud or mistake is alleged and proved, which is not the predicament of these parties. The deed, for aught that appears, was drawn as it was designed to be, but the allegation is, that something beyond the sum stated was intended as an additional consideration. If the bill states the transaction correctly, then the parties did not assent to the same thing. Probably board and maintenance of the grantor was part of the agreement; but the question is, whether it was additional to, or part of, the money consideration? This latter idea, perhaps, Jesse Bell meant to convey when he conversed with his brothers.

But, independently of the want of certainty as to the consideration, if we look to the grantor's statement in the bill, contradicted as it is by Jesse Bell's, relief could not be decreed on the proof of the grantee's admissions, because the bill is not framed upon that state of case, and the admissibility of these admissions has been excepted to, whilst there is no exception to the deed as evidence. Now, differing as the parties to the deed appear to have done, as to the parol consideration, and there being no evidence of either statement, even if such were admissible to control the deed, on which point we express no opinion, we think the written expression of the parties, about which there can be no mistake, should be accepted as the safest guide. By this standard of proof we shall avoid the risk of violating the policy of the law as to written and parol evidence, and, probably, reach the justice of the case as nearly as if either the view of the grantor or grantee were adopted as to the consideration. It thus becomes unnecessary to determine whether the board and maintenance claimed, can be recovered as additional to the consideration contained in the deed.

Next, as to the claim itself, that is, whether it be a lien or not. The record shows that Jesse Bell's personal estate has been administered, and that the balance in the hands of the administratrix, after paying the others, was not sufficient to pay this claim. As that balance was distributed to the widow and children, we may suppose there are no other creditors except this complainant. We are, therefore, relieved from considering the preference of such a claim, for unpaid purchase money, over creditors becoming such after the deed is placed upon record. That it is a lien as against the vendee and those claiming under her, has been affirmed in England, and recognized by the Court of Appeals, in *Schnebly vs. Ragan,* 7 *G. & J.,* 120, where it is said: "A vendor parting with the legal title, still retains his lien as a security for the payment of the purchase money, and the vendee holds the land as trustee for the vendor. *Prima facie* the equitable lien exists, and it lies upon the vendee to show a waiver of it. 1 *Johns. Ch. Rep.,* 308. So, on the other hand, if the purchaser of an estate

prematurely pays the purchase money, before the estate is conveyed to him, the money will be considered as a lien on the estate in the hands of the vendor, for the vendee, or, in case of his death, for his personal representatives. 2 *Madd. Ch.*, 104, 105."

We dissent from the decree, in so far as it affirms the correctness of the auditor's account, as to the amount allowed the complainants, which, as we have said, should have been charged against the defendants at one thousand dollars, with interest, crediting them with the annual valuation of the premises while in possession of the grantor, upon which, as allowed by the auditor, no point was made at the hearing, and we take it to be according to the proof.

As the personal estate appears to have been settled, this claim may be paid out of the proceeds of the land, without remarshalling the assets, thereby saving expense without affecting the ultimate result. Generally, the lien could not be enforced until the remedy against the personalty had been exhausted, but here the interests of the defendants will be consulted by looking at once to the realty.

Without reversing the decree, the cause will be remanded, in order that another account may be taken as to the amount due, and for further proceedings under the decree. *Act of 1832, ch.* 302, *sec.* 6. Each party to pay his own costs on the appeal.

*Cause remanded.*